Bradbury. J.
Two questions, only, arise on the record, 1. Did the petition, as amended, state the cause of action. 2. Did the circuit court err in *314 holding that the bill of exceptions taken in the court of common pleas by the plaintiff, “was not duly allowed and signed” * * *? The amended petition is in the following words :
The plaintiff says:
“On the 9th day of February, A. D. 1892, she was duly appointed and qualified and letters of administration on the estate of James Kernochan, deceased, were issued to her by the probate court of Crawford county, Ohio, and she is now the duly qualified and acting administratrix of said estate1. The defendant is now, and at the time hereinafter mentioned, was, a corporation, duly incorporated under the laws of the state of Ohio, and owned and operated a railroad located in and passing through thevillage of Crestline in this county from the north eastern portion of said village to the southwestern portion thereof, with the cars and locomotives thereon.
“Át the time of the commission of the grievances and wrongs hereinafter complained of, and for more than twenty years prior thereto, a large building known as the Continental hotel was used by the defendant and by the Pittsburgh, Fort Wayne and Chicago railway company as a passenger station and the same was also at the same time used for hotel purposes. During all the same time three of the tracks of defendant’s railroad have been located immediately west of said Continental hotel. A hotel known as the Gibson was, during all said time, located a few feet west of said last named tracks and west of said Continental hotel. During all. said time two of the' tracks of the Pittsburgh, Fort Wayne and Chicago railway have been located immediately south of said Gibson house and said Continental hotel. At and during all of said time *315 immediately south of the last named tracks and east of the three tracks of defendant’s railway there was and had been located a building used by both of said companies as a telegraph office, and immediately south of the building last named two or more tracks of the Pittsburgh, Port "Wayne and Chicago railroad were located and which crossed'the three tracks of the defendant’s railroad. About four rods south of the last named crossing and east of the said three tracks of defendant’s railroad during all said time was located the freight houses of said railroad companies with other tracks of said defendant in front thereof used daily by said defendant in shifting cars from its railroad to the Pittsburgh, Port Wayne and Chicago railroad and for loading and unloading freight. At and during said time one of the principal streets of said village running with and south crossed the three tracks of the defendant’s railroad a few feet south of the crossing last above described. A considerable portion of said village of Crestline lay south of said crossings, and said street was in daily use and much traveled and frequented by the inhabitants of said village and by country people coming into and going out of said village. All of said tracks and crossings are, and always have been much used by said companies; and the employes of said companies and the public generally have been in the habit of passing over said tracks and crossings at all the points above described at all hours of the day and night with great frequency, so that the same became and on the 8th day of January, A: D. 1892, was a public highway.
“The plaintiff in further amendment of her petition says that said James Pernochan was on said *316 Thoman street at the east line thereof when he was struck by said train and killed.
“The said James Kernochan was employed by the Pennsylvania company, lessee of the Pittsburgh, Port Wayne & Chicago Railroad, as a car inspector, and on the night of January 8th, 1892, he was engaged in the discharge of his duties as such car inspector on the tracks of said Pittsburgh, Port Wayne & Chicago railroad, west of the tracks of defendant’s railroad. Between the hours of seven and eight o’clock p. M., it became his duty as such car inspector to pass over the tracks of defendant’s railroad at a point between said telegraph office and said ’freight house.
“At about seven o’clock of said evening the local freight train of defendant was pulled into Crest-line from the North, and stopped on the west track above described in front of the Gibson House, and north of said railroad crossings. Said train was then cut and the locomotive with some of the cars attached thereto, passed over said crossings to said defendant’s freight house, and was there kept for some time loading and unloading- freight and shifting cars.
‘ ‘After doing said work, said cars pushed by a locomotive were negligently backed to couple on to the rear portion of said train left standing as aforesaid on the defendant’s track in front of the Gibson House. Said locomotive and cars so backed were by said defendant negligently put, and then were, in the hands, and under the sole control of inexperienced and unskillful servants. No light or lights were displayed at the rear end of the portion of the train being so backed, and no servant of said company was stationed on the rear car thereof to pi event danger or accidents, and neither *317 the conductor nor the engineer of said train was upon said portion thereof so being backed, but said conductor and engineer had left said train and were out of sight and hearing of the same, and no signal of any kind was given to warn persons who might be upon or about to cross defendant’s said tracks, upon or near said crossings, that said locomotive and ears were being backed, but the same was by said defendant negligently and unlawfully omitted. While said locomotive and cars were being so unlawfully and negligently backed, the said James Kernochan was compelled as aforesaid in the discharge of his duties as aforesaid, to cross the tracks of said defendant’s railroad, at or near the south crossing above described, at which time a passenger train was being run on the east track of defendant’s 'railroad in southerly direction, immediately in front of said James Kernochan, with steam escaping and the bell of the engine being rung, so that the noise made thereby prevented said James Kernochan from hearing the locomotive, and the cars so as aforesaid, approaching from the south and so as to obscure the light from said west track, rendering the same entirely dark, so as to prevent said James Kernochan from seeing t'he rear or any other portion of the cars and locomotive so as aforesaid being backed towards the rear portion of said train so as aforesaid left standing in front of said Gibson House.
“The said James Kernochan had no knowledge or means of knowledge that said cars and locomotive were being so backed from the south, and the said train passing in front of him compelled him upon peril of his life to stop on said track for a moment, and while he so stopped, he was, without any fault *318 or negligence on his part, and wholly by the negligence of the defendant, run over by said ears and locomotive, so as aforesaid being negligently backed, and instantly killed.
“At the time of his death said James Kernochan was twenty-three years old, was an active, strong, healthy man, temperate, of good habits, standing well with his employer, and capable of earning good wages. He left surviving him this plaintiff, as his widow, who was at the time of his death dependent upon him for support. She has been, injured by his death to the amount of ten thousand dollars.
“Wherefore plaintiff as administratrix of said estate asks judgment in the sum of ten thousand dollars. ’ ’
Plaintiff in error contends that the averments of the petition raise a presumption against the decedent of contributory negligence. We do not think this is true. The decedent was engaged in discharging the duties of his occupation, that of car inspector for the Pennsylvania Company, which company and plaintiff in error used in common the yard where the accident occurred, as the exigencies of the business of each required. Of course the deceased' assumed such risks jis grew out of the nature of his occupation, and, therefore, if his death was due to an accident that was incidental thereto, or was caused by the negligence of. another, for whose fault he is chargeable, his administratrix could have no remedy. But one who is engaged in a hazardous occupation, no more assumes the risks that may arise from the negligence of others, than does the person who engages in occupations comparatively safe. The duties of the decedent, as car inspector, mustj *319 of necessity have been performed in the yards of these railroad companies. The cars must be inspected while standing upon some of the tracks therein, — side or main- tracks. He must pass along’ or across these tracks, or near them of necessity. It was possible that moving cars might at any time pass along them. If. they did so without any one being in fault and injured him, no recovery could be had, for this was a risk incidental to his employment.
But he was not bound to anticipate that a locomotive and ears would be placed in the hands of inexperienced or unskillful servants, and then backed through the yards without a light displayed, or a person stationed on the rear end of the moving train to give warning of its approach, especially at a moment when another train with its bell ringing and steam escaping, so as to drown the noise made by the backing train, was also passing; and these are the negligent acts that are alleged to have caused the decedent’s death. Not being bound to foresee and guard against this course of conduct on the part of the plaintiff in error and its ' servants, his failure to do so, though it may have directly contributed to his death, was not negligence and should not defeata recovery.
During the trial of the cause in the court of common pleas, after the plaintiff in that court' had closed her testimony, the railroad company moved ■the court to direct the jury to return a verdict in its favor, because the evidence introduced by her raised a presumption of contributory negligence. This motion being overruled, the plaintiff in error introduced its evidence. The trial resulted in a verdict for the plaintiff below.
The railroad company moved for new trial, assigning as reasons therefor a number of distinct *320 grounds of error, among them, the action of the court in overruling its motion to direct a verdict, that the court erred in admitting, and also in rejecting evidence; that the court erred in the instructions it gave to the jury, and in refusing to charge as requested; that the verdict was excessive ; and that it was contrary to the weight of the evidence. This motion was overruled, and thereupon the railroad company prepared a bill of exceptions embodying all the evidence, the charge of the court and its several rulings in admitting and rejecting evidence. This was signed by the trial judge in due time and the following entry in respect thereof placed upon the journal of the court.
“This day came the defendant and filed its bill of exceptions, duly allowed, signed and sealed, and the same at its request is ordered to be made a part of the record in this case, all of which is done within the-fifty days allowed.”
The cause was taken to the circuit court on error; that court declined to consider the errors assigned in the bill of exceptions, because it found that the bill of exceptions “was not duly allowed and signed, and for that reason find no error in the record of the court below.” * * *
This action of the circuit court is assigned as error in this court.
The plaintiff in error was, of right, entitled to the judgment of the circuit-court upon the assignment of error, if such bill of exceptions, being legally perfected, was before that court.
Suggestion was made in argument that there might have been more than one bill of exceptions taken in the trial court, and that the one the circuit court declined to consider may not be the one that is *321 disclosed in the record brought to this court. The bill of exceptions appears to have been signed by the trial judge, March 3, 1894, it was filed in the court of common pleas, as the file, mark shows, on the 5th of March, 1894, and the entry on the journals of that court of its allowance, was on March 12,1894, seven days later. This difference of dates is, of course, compatible with the suggestion that more than one bill of exceptions mighthave been taken; on the other hand, it might occur in the case of a single bill of exceptions.
An examination of the whole record does not give the slightest corroboration to the suggestion that there was more than one bill of exceptions. The journal of the circuit court, setting forth its refusal to consider the bill of exceptions, shows that its action was based upon the identical record and papers now on file in this court. That court having before it nothing except this record, necessarily acted solely thereon. That record, we have seen, affords no ground to believe that more than one bill of exceptions was ever taken in the action. It is therefore idle to suppose the action of the circuit court was influenced by that theory, and, the suggestion 'should be dismissed as totally unfounded.
In Hill v. Bassett et al. 27 Ohio St., 597, it was held that, “Before a paper purporting to be bill of exceptions can be regarded by a reviewing court, upon error, as a part of the record, it must appear from the record, outside of such paper, that a bill of exceptions was, in due time, tendered to, allowed, signed, and sealed by the court, and made part of the record; and the paper in question must be *322 identified, with, reasonable certainty, as the bill of ex-exceptions which was thusmadepartof the record. ”
This bill of exceptions was identified with reasonable certainty; it was signed by the trial judge and bears the file marks of the trial court.
The journal of the court of common pleas made in the case, recites that the “defendant came and filed its bill of exceptions, duly allowed, signed, and sealed, and the same at its request was ordered to be made a part of the record in this case. ” * * * No ambiguity arises out of this language, it necessarily implies that the bill of exceptions had been presented to, allowed, signed and sealed by the trial ]udge or some judge authorized to act in his stead. It could not have been signed by such judge unless presented to him, and it could not have been ‘ ‘duly allowed, signed and sealed” by any other than a judge having authority to do so. We think the journal entry shows that every act required by the statute to give validity to. the bill of exceptions was performed. The bill of exceptions, having been duly allowed, was before the circuit court, and the plaintiff in error was, of right, entitled to the judgment of the circuit courts upon the questions it presented. The declination of that court to consider them violated this right, and was for that reason prejudicial to the plaintiff in error. It is no answer to this view of the case to say that the circuit court might, or even should, have affirmed^ the judgment below, because the rulings of the trial court, as disclosed in the bill of exceptions were correct. Whether this court should reverse a judgment of the circuit court for striking a bill of exceptions from its files, or for refusing to consider it, where it was made to appear that the questions it presented were frivolous, need not *323 now be considered. No claim is made that the questions arising on the bill of exceptions under consideration are of this character.
Judgment reversed and remanded to the circuit court for further proceedings.